---

(11 Misc. Rep. 188.)

## In re SEAGRIST'S WILL.

(Surrogate's Court, New York County. January, 1895.)

1. WILLS—KNOWLEDGE OF CONTENTS—EVIDENCE.

   It need not be proved that testator gave the instructions for his will, that he read it, that it was read to him, or that he was made acquainted with its contents at the time of its execution, where there are no circumstances showing want of good faith.

2. SAME—TESTAMENTARY CAPACITY.

   Testamentary capacity is sufficiently shown where it appears that testator, at the time of the execution of his will, though very feeble, had enough strength to sign the paper, declare its character, and request the witnesses to attest it, and that he was then able to call to mind the character and extent of his estate, and express his wishes in regard to its final disposition, though all this was only a few hours before his death.

Application for probate of the will of Nicholas Seagrist, deceased. Granted.

Lewis Johnston and Edward W. S. Johnston, for proponents.

Bernard J. Tinney, for Theresa Seagrist.

Robert E. Deyo, Edward S. Clinch, John P. Phelan, and Joseph H. Hayes, for contestants.

Edwin B. Root and Gilbert W. Minor, special guardians.

FITZGERALD, S. Nicholas Seagrist died early on the morning of April 15, 1894. He was advanced in years, and was a bach-

elor. At 4 o'clock in the afternoon of April 14th, eight hours previous to his death, he signed the paper propounded as his will, and it was attested by five witnesses, two being physicians, a father and son, the elder of whom had been his attending physician. Two other witnesses were also a father and son, the elder a clergyman, neither of whom had had any previous acquaintance with the deceased. The fifth witness was a lady friend of Mrs. Theresa Seagrist, the principal legatee under the will, who was a niece of the testator and is the wife of the executor. There was also present at the execution Mr. Orrell, who had been for many years the attorney of the deceased, was his confidential friend, and had drawn the instrument in question at his own home in Brooklyn on April 13th, the previous day, as he states, from instructions that he previously received from the decedent. The probate of the paper is resisted upon all the grounds usually interposed to contested wills. Each subscribing witness testified to the facts essential to a valid execution. The statements only differ in respect to details. Where the Drs. Campbell state that the declaration that the paper was his will was made by the deceased as an affirmative response to a question put by Mr. Orrell, the Messrs. Treat and Miss Woodworth state that the declaration was in words that the paper was his will. Their testimony is confirmed by that of Mr. Orrell. Either the memories of the Drs. Campbell or those of the other four witnesses are at fault in respect to the form of the declaration; but that the statutory requirement in respect thereto was complied with in one or the other form cannot be questioned. Six respectable people, two of whom had never before met Mr. Seagrist or the other witnesses, can hardly be supposed to have entered into a conspiracy to foist a fictitious testament upon Mr. Seagrist.

The contestants claim that there is no evidence that Mr. Seagrist knew the contents of the instrument he signed. Mr. Orrell testifies that it was drawn in accordance with the instructions received by him from Mr. Seagrist. I have already decided upon authority that, where there are no circumstances showing want of good faith, it is not necessary to prove that the testator gave the instructions for the will, that he read it, that it was read to him, or that he was made acquainted with its contents at the time of the execution. In re Hall's Will, 5 Misc. Rep. 461, 24 N. Y. Supp. 864, and cases there cited. But in this case Mr. Orrell testifies to the instructions received, and that he followed them in drafting the paper.

In respect to Mr. Seagrist's mental capacity, it is shown that while he was very ill, and near to his death, he had sufficient strength to take the pen, and in a feeble manner sign his name to the paper, declare its character, and request the witnesses to attest it, and each of the five testify that he was of sound mind at the time. It is also shown that he was a successful and prosperous man of affairs, though modest and reticent in referring to them; that he had accumulated property of more than a quarter of a million dollars; that he had been accustomed in a small way to draw and superintend the execution of legal papers, including

wills, and attending to their probate. Unless the testimony of Mr. Orrell is to be wholly discredited, for which I see no reason, Mr. Seagrist was able to call to his mind the character and extent of his estate, and express his wishes in regard to its final disposition, not only at the time he gave the instructions, but at the time of the execution of the paper, and there is nothing in the evidence to lead me to doubt that his mind did intelligently accompany the act of execution. The signing immediately afterwards of the two satisfaction pieces to mortgages, though feebly done, one with his mark, followed by his death a few hours afterwards, does not lead me to doubt his capacity to execute either the will or the satisfaction pieces. The scheme of the instrument was simply a gift of his personal estate to a favorite niece, and a devise of one-half of his real estate to her, and the residue to his other nieces and nephews, all of whom are named in the instrument.

In respect to the issue of undue influence, the relations of Mr. Seagrist to his kindred, all of the same degree, show excellent reasons for the discrimination in favor of his niece, Mrs. Seagrist. She had been left an orphan in childhood, and had been commended to his care by her father. Mr. Seagrist had been her guardian, and she was under his eye thenceforward; was a member of his household; and when she married, with his approval, her husband also became one of the family. Mr. Seagrist spoke in affectionate terms of his niece and in praise of her husband. Not once, but on various occasions, he stated that she should be the principal object of his testamentary consideration. In respect to his other nieces and nephews, his declarations showed that he entertained for them little or no affection; that, while he was indifferent to all, for some he had a feeling of repugnance. Had he disinherited them, the act would not have been at variance with his expressed sentiments. There is no proof that any person suggested to the decedent the dispositions contained in the will, and I have every reason to believe that the scheme of the instrument was Mr. Seagrist's own. Though his favored niece had the opportunity, and even the motive, to secure the largest benefaction, the fact does not import the exercise by her and her husband of undue influence. Those who raise the issue must prove it affirmatively. It is seldom that its exercise can be shown by direct proof. The contestants seek to sustain their case mainly by showing the declarations of the husband of the principal legatee, that the deceased did not want to make a will, but that the doctor "got around" him, and he consented, which statement the husband denies. Other statements of the husband are also proven. But in this court it is well settled that the declarations of a party in interest, even a principal legatee, cannot militate against the interest of the legatees. La Bau v. Vanderbilt, 3 Redf. Sur. 399, 408.

The contestants also urge that the failure of certain witnesses to disclose the fact that the satisfaction pieces were executed after the will had been signed and attested should be considered as a link in the chain of evidence to establish undue influence. They are not inconsistent with the unconstrained action of the testator.

Nor does the fact that the husband of the principal legatee, in endeavoring to get letters of temporary administration, stated that the personal estate did not exceed $8,000 have any greater significance.   Such facts may raise doubts in respect to the good faith of the persons who make the statements, but they do not justify the rejection of a will which conforms to the declarations of the deceased, and are consistent with the relations shown to have been sustained by him to the different parties in interest.   I have carefully read the able briefs of counsel, and, without presenting an analysis of the large volume of testimony taken in the proceeding, it is sufficient to state as my conclusion that the contestants have failed to overcome the case presented by the proponents, and I will sign the decree admitting the paper to probate.   Probate granted.